UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X          Case No.

In re:

                                                        Chapter 11

FIDI DISTRICT LLC,

                        Debtor.

———————————————————————X

## AFFIDAVIT PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK    )
                             )    SS.:
COUNTY OF NEW YORK  )

Michael Pitsinos, duly sworn, deposes and says:

I am the Manager of Eutychia Group, LLC, the Managing Member, El Toro Group, LLC, a Managing Member of the above-referenced debtor and debtor-in-possession (the "Debtor"). I submit this Affidavit in accordance with Local Bankruptcy Rules for the Southern District of New York, Rule 1007-2.

1.      The nature of the debtor's business and a concise statement of the circumstances leading to the debtor's filing under chapter 11. The Debtor is a restaurant located at Unit C-2a, 111 Fulton Street, New York, New York 10038 (the "Premises") currently operating under the name "Bareburger".

2.      Reasons for filing. Bareburger Group, LLC ("Franchisor") entered into certain franchise agreements, step-in-right agreements and promissory notes (the "Agreements") with the Debtor FIDI District LLC, as franchisee, concerning the operation of a "Bareburger" restaurant at

the Premises. The Debtor has sought rescission of the Agreements on the basis of fraud, fraud in the inducement, material misrepresentations and omissions, illegality, and/or mutual mistake of fact, and to disgorge and restore to the Debtor the restaurant owned by the Debtor, all franchise fees, royalties, advertising fees, rebates, management fees, charges and other consideration paid by the Debtor to the Franchisor and its affiliates, including, but not limited to, RE-GRUB, LLC ("Re-Grub"),TIDM Corp. ("TIDM"), and Be My Burger, LLC ("BMB", and collectively with Re-Grub and TIDM the "Subsidiaries").

3. The Franchisor fraudulently took over control and management of the Bareburger restaurant at the Premises under Management Agreement dated November 1, 2016, as described below. From November 1, 2016 until January 17, 2019, the Franchisor has run the restaurant into the ground by intentionally failing to pay necessary expenses for the restaurant, including, but not limited to, rents (there is over $70,000 of rent arrears due to the landlord of the premises, which has commenced eviction proceedings against the Debtor), payroll taxes to the Internal Revenue Service (approximately $326,591), Sales and Withholding Taxes to New York State (approximately $120,000), even though it continued to pay itself royalties on a bi-weekly basis equal to 5% of the gross revenue of the restaurant which amounted to approximately $ 130,000 annually), plus Branding and Royalty Fees (approximately $156,00 yearly) and Management Fees (approximately $30,420 yearly).

4. In addition, the Franchisor has improperly collected so-called "rebates" from vendors and suppliers of the Debtor, at the expense and to the detriment of the franchisees, the Debtor included, who are paying more than market price for the food and supplies, all to enrich the Franchisor and its affiliates at the expense and to the detriment of the Debtor and other franchisees in the "Bareburger" franchise system. The franchise agreement between the Debtor

2

and the Franchisor does not permit the Franchisor to collect rebates, much less rebates that end up

costing the franchisees considerably more than other restaurants.  The Franchisor has run the

"Bareburger" franchise in a deceitful and fraudulent manner, for its own benefit exclusively, and

has intentionally sought to drain any value from the Debtor store at the expense and to the

detriment of the Debtor's creditors and members.

5.    Upon information and belief, unsecured creditors are owed approximately

$500,000 that the Franchisor has refused to pay.  This figure is subject to verification. However,

the Franchisor has failed and refused to provide complete access to the books and records of the

operations of the restaurant to the Debtor and has intentionally failed to file Federal and New York

State payroll and sales tax returns, and corporate tax returns.

6.    Based upon historical data, the restaurant owned by the Debtor had gross annual

income of approximately $2,600,000. There were sufficient funds to pay these creditors until the

Franchisor diverted these funds to its own pockets. The Franchisor intentionally did not pay these

creditors which has necessitated this Chapter 11 filing.  Furthermore, the Franchisor has

commingled the revenues collected from the Debtor with the revenues collected from other

"Bareburger" restaurants and its own funds.

7.    The Debtor has now (January 20, 2019) taken back control of the Debtor's

Bareburger restaurant from the Franchisor and is now operating the restaurant, which the Debtor

intends to rebrand and operate as anything but a "Bareburger". The Debtor is in the process of

rebranding the restaurant under another concept and has retained the services of a well-respected

restaurant management company to assist the Debtor in this process so that the creditors and

investors can be repaid.

8.    Individual members and officers of the Franchisor EURIPIDES PELAKANOS ("Euripides"), GEORGE RODAS ("Rodas"), GEORGE DELLIS ("Dellis"), EFTYCHIOS PELEKANOS ("Eftychios"), JOHN SIMEONIDIS ("Simeonidis"), SPIRIDON APOSTOLATOS ("Apostolatos"), and    DEMETRIOS VOIKLIS ("Voiklis") (collectively, the "Individual Members") engaged in, and perpetrated a fraud upon the Debtor by making materially false statements and/or omissions to deceive and induce the Debtor into entering into the Agreements with the Franchisor.

9.    The Franchisor and the Individual Members perpetrated a fraud by misappropriating and fraudulently conveying the assets, intellectual property, trademarks, branding and goodwill of non-party Bareburger Inc. to the Franchisor, for no consideration, and then purportedly licensing the right to use the stolen trademarks and intellectual property to the Debtor and other franchisees.   These facts have already been established and determined in a prior litigation in New York State Supreme Court, entitled *Stavroulakis v. Pelekanos* (New York County, Index No.: 653478/2015) (the "Stavroulakis Case"), in which the court issued an Order granting judgment in favor of the Plaintiff against the Franchisor and the Individual Members (except Voiklis, who was not a party to that case), finding each of them jointly and severally liable for trademark infringement with respect to the "Bareburger" trademarks (the "Trademarks and IP"), and fraudulently conveying all of the assets of the original "Bareburger" franchisor, Bareburger Inc., to the Franchisor, among other things.   The Franchisor never disclosed the fact that it did not own the "Bareburger" intellectual property and trademarks that it purported to license to the Debtor under the Agreements.   These allegations form the basis of the Debtor's claims for rescission, which the Debtor has interposed – along with other Bareburger franchisees – in an

action in New York State Supreme Court entitled *El Toro Group LLC v. Bareburger Group LLC* (New York County, Index No.: Index No.: 651018/2018) (the "El Toro Litigation").

10.     In short, the Franchisor and the Individual Members deceitfully presented themselves as the rightful owners of the Bareburger trademarks and intellectual property, even though they knew that the Franchisor did not have good title to, or any rights to license such Trademarks and IP to the Debtor and the other Bareburger franchisees.

11.     In addition, the Franchisor and the Individual Members failed to disclose material litigation that was pending against the Franchisor and the Individual Members for trademark infringement, fraud, and other intentional torts that the Franchisor and the Individual Members were required to disclose in the Franchisor's Franchise Disclosure Document ("FDD"), upon which the Debtor relied when deciding to invest in the Bareburger franchise and entering into the subject franchise agreements.

12.     The Franchisor's FDDs are riddled with materially false and misleading statements and/or omissions concerning, among other things, the amount of the rebates collected by the Franchisor, the relationship between Bareburger Inc. and the Franchisor, the Franchisor's rights to the trademarks and intellectual property, and products that the Debtor was required to purchase in connection with the Bareburger franchise system.

13.     The Franchisor and the Individual Members have schemed to defraud the Debtor of their ownership of the restaurant by purporting to exercise the Franchisor's "step-in rights" under the franchise agreements to take possession and control over the Debtor's and the other restaurants.  Over the course of managing the restaurants the Franchisor, through itself and an affiliate entity that the Franchisor formed called TIDM Corp., as well as the Individual Members looted the assets of the restaurants and misappropriated monies collected for sales taxes,

withholding taxes, and other liabilities that the Debtor and their investors may have personally liability for.

14.    The Franchisor has failed to pay the last three (3) months' rent to the landlord of the Premises on behalf of the Debtor, intentionally causing defaults under the lease for the Premises so that the Franchisor and/or the Individual Defendants could take over the Premises under a new lease with the landlord, at the expense and to the detriment of the Debtor, its creditors and members. Indeed, the lease for the Premises is the Debtor's primary asset, and to the extent it is lost as a result of the Franchisor's and the Individual Members' fraudulent actions the Debtor would have no ability to pay its creditors, and would have to liquidate, at a tremendous loss to the creditors and members of the Debtor.

15.    Instead of paying such taxes, rents and other necessary debts, the Franchisor and the Individual Members misappropriated and diverted the funds to themselves through the payment of exorbitant management fees, advertising fees, rebates, mark-ups and other charges that have financially crippled the Debtor's restaurant and left the Debtor and their investors saddled with the liabilities.

16.    The Franchisor and the Individual Members intentionally sought to saddle the Debtor and their investors with the liabilities to force them to sell the assets to the Franchisor and the Individual Members for nominal or no consideration and leave the Debtor, the other restaurants and their investors holding the debts.

17.    The Franchisor and the Individual Members intentionally caused a default under a promissory note while exercising their "step-in-rights" in order to try and enforce the note against the Debtor's and other restaurants' assets. Meanwhile, they now claim that the Debtor and the other restaurant entities are liable pursuant to the promissory note for $991,464.34 plus interest

thereon at 5% per annum from May 5, 2017 to August 3, 2017, plus interest thereon at 18% per annum from August 4, 2017.   Worse, the Franchisor and/or Individual Defendants, or someone operating under their control, signed my name to the promissory note without permission to make it appear as a legitimate debt.   Also, the Franchisor claims that they advanced approximately $600,000 to the Debtor (and four other franchisees controlled by the Debtor's parent company and Class-A Member, El Toro Group LLC) in May 2017, even though the Franchisor never provided any proof of such monies being advance to, or for the benefit of the Debtor or its affiliates.

18.     The Debtor seek to rescind the Agreements and disgorgement and restitution of all franchise fees, royalties, management fees, advertising fees, rebates, mark-ups and other charges collected by the Franchisor, Re-Grub, TIDM and their affiliates under said agreements, and monetary damages the amount of which is not fully determined.

19.     Thus, the Debtor requires the protection of Chapter 11, *inter alia*, to reorganize its business in an orderly manner, work out a plan to repay its creditors and investors, and pursue the Franchisor and the Individual Members for the damages it has inflicted on the Debtor and emerge as a continued viable business entity.

20.     This case was not originally commenced under chapter 7 or chapter 13.

21.     No committee was organized prior to the order for relief in this chapter 11 case.

22.    The Debtor has filed Official Form 204 setting forth the following information with respect to each of the holders of the twenty (20) largest unsecured claims, excluding insiders: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the telephone number, e-mail address, the name(s) of person(s) familiar with the debtor's account, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

23.    Information with respect to each of the holders of the five (5) largest secured claims: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed:

Alma Bank
28-31 31st Street
Astoria NY 11102
Claim: $119,188.37 (subject to verification)
Collateral: UCC-1 restaurant assets

Queens Medallion Funding LLC
21-03 44th Avenue
Astoria, New York 11101
Claim: $577,666.67 (subject to verification)
Collateral: UCC-1 restaurant assets

Lease Corporation of America
3150 Livernois Road, Suite 300
Troy MI 48083
Claim: amount unknown
Collateral: POS Equipment

US Foods, Inc.
1051 Amboy Avenue
Perth Amboy NJ 08861
Claim: amount unknown
Collateral: UCC-1 restaurant assets

Rapid Capital Finance, LLC
c/o Corporation Service Co.
P.O. Box 2576
Springfield IL 62708
Claim: amount unknown
Collateral: Credit Card Receivables

24.     Summary of the debtor's assets and liabilities: Assets - $1,314,684.74 (to be

confirmed upon examination of books and records of Debtor in possession of Franchisor);

Liabilities - $1,658,797 (to be confirmed upon examination of books and records of Debtor in

possession of Franchisor).

25.     The Debtor does not have any publicly held shares of stock, debentures or other

securities.

26.     List of all of the Debtor's property in the possession or custody of any custodian,

public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such

entity, giving the name, address, and telephone number of each such entity and the court in

which any proceeding relating thereto is pending: None (to be confirmed upon examination of

books and records of Debtor in possession of Franchisor)

27.     The Premises leased or held under other arrangement from which the Debtor

operates its business: Unit C-2a, 111 Fulton Street, New York, New York 10038.

28.     The location of the Debtor's substantial assets – Unit C-2a, 111 Fulton Street,

New York, New York 10038; location of Debtor's books and records – Baker Tilly Virchow

Krause, LLP, CPAs, One Penn Plaza, Suite 3000, New York, NY 10119, Tel. No. (212) 697-

6900; Bareburger Group LLC, 30-01 Vernon Boulevard, Astoria, NY 11106; Paychex Payroll;

Bareburger Internal Staff; FIDI District, LLC's accountant's office at 21-03 44th Avenue, Long

Island City, NY 11101; Apostolatos CPA, PLLC, 3005 38th Avenue, Long Island City, NY

11101 [CFO of the Franchisor, is managing the finances with their bookkeeper]. There are no
assets of the Debtor held outside the territorial limits of the United States.

29.     The nature and present status of each action or proceeding, pending or threatened,
against the debtor or its property where a judgment against the debtor or a seizure of its property
may be imminent: Non-Payment of Rent Action seeking Judgment of Eviction and $47,698.17 in
past due rent and interest, plus approximately $23,849 that is due for rent and late charges for the
month of January 2019; 111 Fulton Street Investors, LLC, Landlord v. FIDI District, LLC et al;
Civil Court of the City of New York, Housing Part; Index No. 080751/18.

30.     The names of the individuals who comprise the debtor's existing senior
management, their tenure with the debtor, and a brief summary of their relevant responsibilities
and experience: Michael Pitsinos, Manager, 2013 to November 1, 2016, Day-to-Day
Management of Restaurant Operations, 3 Years.  From November 1, 2016 to January of 2019, I
do not know who the senior manager of the restaurant operations, but upon information and
belief, the Franchisor had operated the restaurant through the following individuals:  Eftychios
Pelekanos, Euripides Pelekanos, Spiros Apostolatos, Jimmy Voiklis, George Rodas, George
Dellis, John Simeonidis, Jr. was who operated this restaurant location; Jelica Dragoljevic, the
Franchisor's current Controller, who has managed and overseen the finances, collection of
revenues, and payment of expenses of the Debtor's restaurant.

(b) Additional Information if Business is to Continue. The Debtor intends to continue to operate its business:

(1) the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the chapter 11 petition: $65,010.

(2) the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the chapter 11 petition to, officer, stockholder and directors: $5,000; and

(3) a schedule, for the thirty (30) day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing:

Estimated Cash Receipts from Sales for 30-day period:          $215,300

Estimated Disbursements for 30 Day Period:

| | |
|---|---|
| Monthly Payroll | $65,010 |
| Executive Salary | 5,000 |
| Rent | 22,185 |
| Cost of Goods Sold | 87,630 |
| Expenses | 41,436 |

Total Estimated Disbursements for 30 Day Period          -$221,261

Net Cash Gain for 30 Day Period                                ($5,961)


Outstanding Account Receivables:  unknown

Dated: January 20, 2019
       New York, New York

                                                    _____

                                             Name: Michael Pitsinos
                                              Title: Manager/Authorized
                                              Signatory

Sworn to before me this
20th day of January 2019

_____
       Notary Public

12